WILSON COUNTY BOARD OF EDUCATION v. BESSIE H. LAMM, WIDOW;
VIRGINIA LAMM HAYES AND HUSBAND, J. F. HAYES; JACK F.
HAYES, A MINOR; TEMPIE ANN HAYES, A MINOR; JACK THOMAS
HAYES, A MINOR; THE FREE WILL BAPTIST CHILDREN'S HOME,
INC.; AND ALL PERSONS NOT IN BEING WHO MAY BY ANY CONTINGENCY
OWN OR ACQUIRE ANY INTEREST IN THE LANDS CONSTITUTING THE SUBJECT
MATTER OF THIS ACTION BY REASON OF THE LAST WILL AND TESTAMENT OF
GROVER T. LAMM, DECEASED

No. 697SC422

(Filed 17 December 1969)

**1. Appeal and Error § 47— harmless error rule**

It is the settled rule of appellate courts that verdicts and judgments
will not be set aside for harmless error.

**2. Adverse Possession § 2— open and notorious possession**

In this action to quiet title to realty, plaintiff could acquire title to
the disputed property by adverse possession only if the jury, under proper
instructions, were satisfied that the acts of ownership described by the
witnesses constituted open, notorious and adverse possession.

**3. Adverse Possession § 23— burden of proof**

The party asserting title by adverse possession must carry the burden
of proof on that issue.

**4. Adverse Possession §§ 2, 25.1— instructions — permissive use —
hostile possession**

Where plaintiff conceded that its entry into possession was with per-
mission of the owner and offered no proof of its allegation that it was
put into possession "as owner," the trial court properly charged that if
the jury believed the entry into possession was permissive, such possession
*did not become adverse until the acts of dominion done in the character*
of owner were such as to give notice to the owner that permissive use was
disclaimed.

**5. Adverse Possession § 24; Evidence § 35— declaration accompany-
ing and characterizing transfer of possession — exception to hearsay
rule**

In this action by plaintiff county board of education *to* quiet title *to*
realty used as a school site since 1923, wherein plaintiff claimed title to
the property by adverse possession, testimony by defendants' witness of
statements made by the county superintendent in 1922, shortly before
possession of the property was transferred to plaintiff, that the owner
was giving the site for as long as it was a school and "that's as long as
we want it," *is held* admissible as an exception to the hearsay rule as a
declaration accompanying and characterizing the act of transfer of
possession.

**6. Adverse Possession § 24— harmless error in admission of evidence
— similar evidence properly admitted**

In this action to quiet title wherein plaintiff school board claims title
to the disputed property by adverse possession, error, if any, in the ad-

mission of testimony by defendants' witnesses of declarations by the title-holder, at approximately the time he put the school board into possession and on two occasions while it has been in possession, that the county was using the property as long as it was used for school property and that the property would go back to him when the school was discontinued, *is held* not prejudicial to plaintiff where a declaration to the same effect made by an agent of plaintiff was properly admitted.

**7. Adverse Possession § 25.1— instructions — contract for erection or repair of school — ownership of site and registration of deed — statute**

In this action to quiet title wherein plaintiff county board of education claims title to the disputed property by adverse possession, the trial court did not err in failing to charge the jury upon the statute prohibiting a county board of education from contracting for the erection or repair of any school building unless the site on which it is located is owned by the county board of education and the deed for the site is properly registered, Ch. 36, § 64, Session Laws of 1923, later codified as C.S. § 5472, a violation of this statute not being evidence of adverse possession, and plaintiff's evidence showing that no contract for construction or repair of the school building on the disputed property has been entered since the effective date of the statute.

APPEAL by plaintiff from *Bone, E.J.,* at the March 1969 Civil Session of WILSON Superior Court.

This is a civil action brought by plaintiff Board of Education to quiet title to realty which the Board has used as a school site since 1923. The Board claims ownership by adverse possession. The complaint alleges that "[p]rior to the year 1922 Grover T. Lamm [Lamm] was the owner in fee" and joins as defendants appropriate devisees of Lamm who died in 1952.

The evidence tended to show that plaintiff entered into possession of the premises in 1922 and let a contract for the construction of the buildings now standing. The buildings included a six-classroom brick schoolhouse called Lamm's School, a frame teacherage, and a pumphouse. Since 1923, plaintiff has operated a grammar school there and has made necessary repairs through its maintenance department, treating it "just like all the other schools in the county." The frame dwelling initially used as a teacherage has in recent years been rented by plaintiff to persons not associated with the school system. The school site was located near "Lamm's Crossroads" and approximately in what was at that time the middle of Lamm's farm. A corner lot, the boundaries were defined by roads on the north and east sides and by Lamm's cultivated fields on the south and west. In 1950 or 1951, Lamm laid off and plaintiff caused to be constructed a driveway around the south and west boundaries on land Lamm previously cultivated after the principal had casually men-

tioned to him the inconvenience of parking buses on the playground. The complaint was amended to delete the claim of title to this portion by adverse possession.

The complaint and the admissions to these allegations in the answer establish that "[p]rior to the year 1922 Grover T. Lamm was the owner in fee of that certain tract or parcel of land * * *" and that "[i]n the year 1922 the said Grover T. Lamm put plaintiff in possession of said land * * *." The plaintiff's evidence regarding the entry into possession consists only of one witness' testimony that "I do not know how the Wilson County Board of Education obtained the land for the site of Lamm's School" and another's that "I never saw a deed. I never heard a deed mentioned."

Consistent with his charge that "a crucial question here is circumstances under which the Board of Education went into possession," the court admitted over objection testimony by defendants' witness Harrison relating to a declaration of E. J. Barnes, County Superintendent, made at the time. Harrison described a public meeting held at Lamm's store in about 1922 to discuss the relocating of several schools in the district. In answer to the question, "What statement did he [the county superintendent conducting the meeting] make [with regard to how the land for Lamm's School site was obtained]," the witness testified:

> "That question was raised several times. When they were asking about where the site was going to be, he showed it to them. It was right there in sight of the store, right in sight of where the school is now. And he told them that Mr. Lamm was giving the site for as long as it was a school. He said, 'After all, that's as long as we want it. What do we want with it if we don't have any school here?'"

Several declarations made by Lamm were also admitted over objection. (1) Defendants' witness Peele testified as to a conversation with Lamm in 1922 prior to the time construction began on the site: "I was taking him home, and it was just when we got in sight of — a quarter of a mile of where he lived at. I told him I understood he had let the county have a school site there. He said, yes, he had. I said, 'How much did you get for it?' he said — He raised his voice — Says, 'I didn't sell it. I let them have it long as it was used as school property, and then it went back to me when they discontinued school there.'" (2) Defendants' witness Simpson testified to a conversation with Lamm in 1922 prior to the time construction began on the site: "We were talking about putting a school there, and I asked him, I says, 'What are you getting out of it now, what's

the county paying you for this land?' He says, 'The county ain't paying me anything. I'm giving the land for a school as long as it is a school, and when it ceases to be a school it goes back to me or my estate.'" (3) Defendants' witness Jones testified as to a conversation with Lamm in 1940: "I bought a lot from him [Lamm], and I didn't have anymore money to use to get more of the land, and I wanted to use some more land. He told me I could use some more land to put cars on as long as I didn't abuse the land, just like Lamm's School. That they was using the land as long as they had school there, and when the school was discontinued the land would go back to him." (4) Defendants' witness Moore testified as to a conversation between her father and Lamm (date uncertain): "* * * And he made the statement that he only gave the property for Lamm's School to be used only as long as it was a school, and then it was to go back to him."

The trial court's charge to the jury included instructions as to the law of this State regarding the elements of adverse possession. Issues were submitted to and answered by the jury as follows:

"1. Is the plaintiff the fee simple owner of the lands described in the Complaint as amended?

ANSWER: No.

2. If so, does the claim of the defendants constitute a cloud on plaintiff's title?

ANSWER: .............."

From judgment entered on the verdict in favor of defendants, plaintiff appealed.

*Connor, Lee, Connor & Reece by Cyrus F. Lee and David M. Connor for plaintiff appellant.*

*Lucas, Rand, Rose, Meyer & Jones by Louis B. Meyer for defendant appellees.*

BRITT, J.

[1] The assignments of error brought forward and argued relate to rulings of the court admitting certain evidence and to certain aspects of the charge. This Court is governed by the "settled rule of appellate courts that verdicts and judgments will not be set aside for harmless error or for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of was erroneous but that it was material and prejudicial, amount-

ing to a denial of some substantial right." *Herring v. McClain,* 6 N.C. App. 359. Plaintiff contends there is reversible error. We think not; rather, the record indicates that plaintiff simply failed to show adverse possession to the satisfaction of the jury.

**[2, 3]**   Plaintiff could acquire title by adverse possession only if the jury, under proper instructions, were satisfied that the acts of ownership described by the witnesses constituted open, notorious and adverse possession. The settled law, restated in the case of *State v. Brooks,* 275 N.C. 175, 166 S.E. 2d 70, is that "the party asserting title by adverse possession must carry the burden of proof on that issue." The record indicates that the instructions given presented the issue fully and fairly and are in accord with the classic definition of adverse possession stated in *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347, and cited with approval in *State v. Brooks, supra,* as follows:

> "It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner."

**[4]**   In its complaint, plaintiff conceded and the defendants admitted that plaintiff's entry into possession was with the permission of the owner ("Grover T. Lamm put plaintiff in possession of said land"), and offered no proof of the additional allegation — which defendants denied — that plaintiff was put into this possession "as owner." Thus, the court properly charged that where the jury believed the entry into possession was permissive, such possession does not become adverse until the "acts of dominion * * * done in the character of owner" are such as to give notice to the owner that permissive use is disclaimed. The jury verdict indicates that the plaintiff failed to satisfy them that there was an adverse possession rather than a merely permissive one.

**[5]**   The testimony of defendants' witness Harrison relating to the declaration of County Superintendent E. J. Barnes that "Lamm was giving the site for as long as it was a school" and "that's as long as we want it" was properly admissible over objection. Certain *decla-*

*rations accompanying and characterizing an act* are allowed as a well-known exception to the hearsay rule. See Stansbury, N.C. Evidence 2d, § 159. The acquisition of some type of right in Lamm's realty was clearly non-verbal conduct of the sort which frequently "must be accompanied by some manifestation of purpose in order to give it any effect at all, or to determine which of two possible effects it is to have." Stansbury, N.C. Evidence 2d, § 159, p. 399.

The rule that *declarations by persons in possession of land or chattels* are admissible is a particular application of the above-stated principle to cases such as actions in adverse possession where "[t]he bare fact of possession is usually equivocal." Stansbury, N.C. Evidence 2d, § 160, p. 401. The case of *Newberry v. R. R.*, 133 N.C. 45, 45 S.E. 356, is cited for Stansbury's proposition that "[p]ossession by the declarant is of course essential to admissibility." The court held in that case that where one person claims goods by purchase of another, the declarations of the seller as to ownership of goods are not admissible under this where he was an assignor who had never at any time been in possession. The "possession by the declarant" element should not be applied with such strictness as to render the admission of Barnes' declaration unassisted by this rule, because although the school board was not in possession at that precise instant, the declaration did "accompany," "characterize" and "explain" the forthcoming entry into possession, which did, in fact, take place soon thereafter. Also, the court has indicated that the basic principle of admitting declarations accompanying and characterizing an act "cannot reasonably be restricted to the very moment of the act." *Moore v. Gwyn*, 26 N.C. 275.

**[6]** The defendants' witnesses Peele, Simpson, Jones and Moore testified as to declarations of the titleholder Grover T. Lamm at approximately the time he put the school board into possession (Peele and Simpson) and at two separate instances while it has been in possession (Jones and Moore). A strong argument can be made that Lamm's declarations to Peele and Simpson accompany and characterize the act of putting plaintiff into possession. An equally strong argument can be made that the declarations to which Jones and Moore testified are admissible for the limited purpose of refuting the notoriety of the adverse claim which plaintiff asserts because each shows that the titleholder considered the use still permissive at the time each was made. Such an argument is founded on a logical view of the rule making declarations of the *possessor* admissible to show a notorious and hostile claim. The case of *Batts v. Staton*, 123 N.C. 45, 31 S.E. 372, however, is authority for the ex-

clusion of a declaration, made by one who put the claimant's predecessor into possession, to the effect that the entry was permissive, with the land to be used as a matter of favor and the title to remain in the declarant. The admission of such a declaration was held to be error. The case itself offers neither argument nor authority for such a position. It has not been cited as authority in subsequent North Carolina opinions.

The enunciation of a clear rule in favor of the admissibility of declarations by the titleholder, both at the time the claimant entered possession and at a subsequent time for the purpose of refuting notoriety, might be valid and desirable. However, it is only necessary at this point for this Court to observe that whatever error there may be in the admission of these declarations at bar is not material and prejudicial where the declaration of the possessor through his agent Barnes — which was properly admitted — was to like effect.

[7] There is no prejudicial error in the failure of the court to charge the jury as to Chapter 136, section 64, Session Laws of 1923 (later codified as C.S. § 5472, 1939). Plaintiff contends that the erecting and repairing of the school building were done in the character of full owner and, therefore, "hostile" because of the statutory provision that "[t]he county board of education shall make no contract for the erection or repair of any school building unless the site on which it is located is owned by the county board of education, and the deed for the same is properly registered and deposited with the clerk of court." The act itself, however, provided that it was effective 15 April 1923. The plaintiff's evidence shows that the Lamm School contract was let and construction begun in 1922 and that subsequent repairs have been made not by way of letting contracts but by plaintiff's own agents. The statute indicates the intent to establish two requirements which must now be met by a county board of education before acting in the manner in which the plaintiff has acted. Although plaintiff contends it acted as owner of the site, it has never contended there was a deed properly registered and deposited or even that it was under the impression that there was one. The two elements of the statute are not separable. Violation of this statute is not evidence of adverse possession.

The trial of this action in the superior court was free from prejudicial error.

No error.

BROCK and VAUGHN, JJ., concur.