ALVIN CODELL WATSON, Administrator CTA of the Will of J. Sanford Chilton; BETTY JUNE WATSON CHILTON, Widow of J. Sanford Chilton; and MOODY FUNERAL HOME, INC., Trustee Under the Will of J. Sanford Chilton v. ERNEST CHILTON and Wife, PEARL CHILTON; HOWARD CHILTON and Wife, EVELYN CHILTON; MARION CHILTON and Wife, GRACE CHILTON; ANNA CHILTON MATTHEWS, Widow; ETHEL CHILTON NICHOLS and Husband, HARVEY NICHOLS; SAVANNAH CHILTON NORMAN and Husband, HARVEY NORMAN; LOTTIE CHILTON WESTMORELAND and Husband, HOWARD WESTMORELAND

No. 7217SC21

(Filed 29 March 1972)

**1. Adverse Possession § 2— possession under void will — permissiveness**

Where a devise of a life estate in land was void because the land passed by the entireties to testator's widow, and all the evidence showed that the members of testator's family assumed that the purported devisee took a life estate in the land under the will, the devisee's possession of the land as a claimant under the will was permissive and not hostile.

**2. Adverse Possession § 11.5— by child against parent**

Adverse possession cannot be predicated on the possession by a child against a parent unless the parent has had some clear, definite and unequivocal notice of the child's intention to assert an exclusive ownership in himself.

**3. Adverse Possession § 7— by tenant in common**

Where respondent went into possession of land under a purported devise of a life estate in the land by his father, when in fact the land passed by the entireties to respondent's mother, and title to the land thereafter passed under the residuary clause of the mother's will to all of her children in equal shares, respondent did not acquire by adverse possession title to the land by his possession thereof for more than twenty years after his mother's death, since the possession of one tenant in common is presumed to be the possession of all, and there is no evidence of any act manifesting to the co-tenants that respondent's possession was hostile to them.

APPEAL by respondents from *Seay, Judge,* 28 June 1971 Session of SURRY County Superior Court.

This is a partitioning proceeding wherein petitioners seek a sale of the lands in question for division. The petition alleged that the respondents, children of Martha Chilton and W. L. Chilton, together with J. Sanford Chilton, deceased, also a child of Martha and W. L. Chilton, owned the land as tenants

in common, each child owning an 1/8 interest; and that petitioners owned the 1/8 interest of Sanford Chilton as devisees under his will. Answer was filed for the respondents, and verified by all respondents except Anna Chilton Matthews. The answer denied the petitioners' allegation of ownership. By further answer, it was averred that Howard Chilton owned the lands, having acquired title by adverse possession. The answering respondents, with the exception of Howard Chilton, averred that they have no interest in the land, acknowledged that Howard Chilton and his privies are the owners, and released and relinquished unto him and his heirs all right, title and interest in the property.

By agreement the matter was heard by the court without a jury. There is no dispute as to the adequacy of description, location, or boundaries of the property. The following facts are not in dispute:

By deed dated 28 January 1935, Matilda F. Lawson and husband, James W. Lawson, conveyed the property to W. O. McGibony, Trustee, securing a note evidencing an indebtedness to the Land Bank Commissioner. Default having been made by grantors, the property was sold at auction, bid in by W. L. Chilton and wife, M. S. Chilton, and by deed dated 23 November 1937, W. O. McGibony, Trustee, conveyed the property to W. L. Chilton and wife, M. S. Chilton. M. S. Chilton and Martha S. Chilton are one and the same person. W. L. Chilton died in 1939. By the Fourth Article of his will, he devised the property to Howard Chilton for life, with remainder to Howard's "lawful children in fee simple." The will was probated and Martha S. Chilton, Marion Chilton, and W. H. Norman qualified as Executors. Martha Chilton died in 1954 leaving a will. She bequeathed specifically certain shares of corporate stock and devised to Sanford Chilton her home and two acres of land for his lifetime. All the rest and residue of her property she devised to her children, share and share alike. All her children survived her: J. Sanford Chilton, Howard Chilton, Ernest Chilton, Marion Chilton, Anna Chilton Matthews, Ethel Chilton Nichols, Savannah Chilton Norman, and Lottie Chilton Westmoreland. J. Sanford Chilton died in 1968 leaving a last will and testament under which all of his property was devised to his wife, Betty June Chilton, petitioner herein, for life with remainder to Moody Funeral Home, Trustee, also a petitioner.

Petitioners claim an 1/8 undivided interest in the property, contending that W. L. Chilton did not own the property and could not devise it; that his will did not require an election on the part of Martha S. Chilton, and none was made; that the property passed under the residuary clause of the will of Martha S. Chilton, surviving tenant by the entirety; and that the 1/8 interest of J. Sanford Chilton acquired under his mother's will was devised by him to petitioners.

Howard Chilton contends that he went into possession of the property in 1939 under his father's will and has acquired title by adverse possession either for seven years under color of title or for more than 20 years since his father's death in 1939.

At trial, and before any evidence was offered, the parties stipulated that the origin in title to the property as to all parties is the deed of W. O. McGibony, Trustee, to W. L. Chilton and his wife, Martha S. Chilton. Petitioners introduced into evidence that deed, the will of Martha S. Chilton, the will of J. Sanford Chilton and rested. Respondents' motion for dismissal was denied.

Respondent's record evidence consisted of the will of W. L. Chilton, the deed of trust of Lawson to McGibony, Trustee, and a plat of the property. Their oral evidence consisted of the testimony of some 12 witnesses as to the use of the property by Howard Chilton. These witnesses included Howard Chilton, some of his brothers and sisters, a tenant, two employees of the Agriculture Stabilization and Conservation Committee, and some neighbors. At the end of all the evidence, the respondents' motion to dismiss was again denied. Their motion for peremptory ruling was also denied. Respondents tendered two sets of requests for findings of fact and conclusions. These were denied.

The court found facts, made conclusions of law, and entered judgment in favor of petitioners. Respondent excepted to certain of the findings and conclusions, and to the entry of the judgment and appealed.

*R. Lewis Alexander, and Faw, Folger, and Sharpe, by Thomas M. Faw, for petitioner appellees.*

*Gardner and Gardner, by John W. Gardner, and William G. Reid, for respondent appellants.*

MORRIS, Judge.

Respondents (with the exception of Anna Chilton Matthews) have taken the position that Howard Chilton is the owner of the land in question. In their answer they state that he has acquired title by adverse possession. Interestingly enough, they also state that by their verified answer they release and relinquish all of their right, title, and interest therein to him.

As we understand Howard Chilton's position, it is that he claims that his father's will, devising the property to him for life, constituted color of title which ripened into title in him after seven years adverse possession. This, he says, occurred prior to his mother's death and at her death he owned the property, and it could not pass under her residuary clause. In the alternative, he contends that he had acquired title by adverse possession of over 20 years without color of title.

There is authority in this State that a will defectively probated, but where the defect in the probate (only one witness) "was not so obvious but what it might have misled a man of ordinary capacity," was color of title for the land disposed of therein. *McConnell v. McConnell*, 64 N.C. 342 (1870). There the devisee went into possession claiming under the will. Later, when his title was attacked because of the invalidity of the will, he relied on acquisition of title by adverse possession under color of title.

[1] There is also authority for the principle that where one enters into possession of lands claiming as a devisee under a will where that devise was void does not claim adversely but rather permissively or mistakenly. See *Barrett v. Williams*, 217 N.C. 175, 176, 7 S.E. 2d 383 (1940), where Chief Justice Stacy said:

> "If he entered into possession of the *locus in quo*, claiming it, *pro hac vice*, as devisee under his father's will—and there is some evidence of this—then his possession and those claiming under him up to the time of his death would be permissive rather than adverse to plaintiff's rights under the ulterior limitation."

The clear and obvious inference from all the pleadings and evidence in this case is that all the members of the family assumed that Howard Chilton took a life estate in the property

under W. L. Chilton's will with the remainder to Howard's children. Howard Chilton's evidence was to that effect as was the evidence of his brothers and sister and daughter.

[2]   Additionally, the general rule is that an adverse possession cannot be predicated on the possession of a child as against its parent. "In order that a possession by a parent against a child, or vice versa, may become adverse, the owner must have had some clear, definite, and unequivocal notice of the adverse claimant's intention to assert an exclusive ownership in himself." 3 Am. Jur. 2d, Adverse Possession, § 148, p. 230. The character of the possession—whether it is adverse—is for the jury. Here the court as the trier of facts found that it was not.

[3]   Respondents claim that the evidence supports no other inference or finding but that Howard Chilton acquired title by adverse possession for more than 20 years after his mother's death against his brothers and sisters—tenants in common under their mother's will. Regardless of whether his claim is under color of title for seven years or under claim of right, without color of title, for 20 years, he must show his possession to have been *actual, open, visible, notorious, continuous* and *hostile* to the true owner's title and to all persons for the full statutory period. *Newkirk v. Porter,* 237 N.C. 115, 74 S.E. 2d 235 (1953).

But the possession of one tenant in common is presumed to be the possession of all tenants. *Tharpe v. Holcomb,* 126 N.C. 365, 35 S.E. 608 (1900). We think what was said there is applicable here:

"The evidence is that 'Angeline (defendant's vendor) entered into possession of the land, claiming it as her own under the will of Elcana Elliott, . . . claiming it adversely to all others, claiming it as her own under said will.' This proof shows only quiet, undisturbed possession, and that is not inconsistent with a holding for all the tenants in common. It does not indicate a hostile attitude of the occupant towards his cotenants as contemplated by the statute, Code, section 141. To that end, there must be some act done between the parties from which the jury or court can see that a hostile relation exists—that the defendant's intent to hold alone is manifested to the cotenants. Then the statute begins to run. If the cotenants attempt to

assert their claim, as to enter, or to demand an account for rents, etc., which is resisted by the occupant, then his possession becomes adverse, and, if it continues for seven years, his title will ripen against his cotenants . . . " 126 N.C., at 366-367.

Respondents, having asserted title in Howard Chilton by adverse possession, had the burden of proving that issue. *Board of Education v. Lamm,* 6 N.C.App. 656, 171 S.E. 2d 48 (1969), affirmed 276 N.C. 487 (1970) ; *State v. Brooks,* 275 N.C. 175, 166 S.E. 2d 70 (1969). Here the court was the trier of the facts. It was his duty to consider and weigh all the competent evidence before him, pass upon the credibility of the witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn therefrom. Here the court concluded the respondents had not met their burden of proof. He found facts which are supported by the evidence and the inferences which can reasonably be drawn therefrom. The findings are, therefore, conclusive on appeal. *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm.,* 279 N.C. 313, 182 S.E. 2d 373 (1971). The conclusions of law are supported by the findings of fact.

The judgment of the Superior Court is

Affirmed.

Judges CAMPBELL and PARKER concur.